**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT ASHLAND**

**CIVIL ACTION NO. 18-1-DLB-EBA**

**LEWIS BUSTETTER**                                                                           **PLAINTIFF**

**v.**                           **MEMORANDUM OPINION AND ORDER**

**STANDARD INSURANCE COMPANY**                                              **DEFENDANT**

* * * * * * * * * * * * * *

Plaintiff Lewis Bustetter alleges that Defendant Standard Insurance Company ("Standard") has wrongfully deprived him of benefits under a long-term disability ("LTD") and life-insurance policy issued to him as an employee of Ceva Logistics U.S., Inc. ("CEVA"). Defendant Standard has filed a Motion for Judgment on the Administrative Record (Doc. # 46) and Plaintiff has filed a Motion for Summary Judgment. (Doc. # 47). Both Motions having been fully briefed (Docs. # 48, 49, 50, and 51), they are now ripe for the Court's review. For the reasons set forth below, Plaintiff's Motion is **granted in part** and Defendant's Motion is **denied**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Bustetter worked as a tank-truck driver for CEVA. As a benefit of his employment with CEVA, he obtained disability coverage under a Group LTD Policy (#647503-D). (AR[1] 611). An employee's eligibility for benefits under the Group LTD Policy is dependent upon the length of time the employee is injured. (AR 30–31). For

---

[1]    "AR" refers to the Administrative Record, which was filed with the Court on March 15, 2018 and supplemented on April 9, 2019. (Docs. # 24 and 42).

the first 24 months, known as the "Own Occupation Period," an employee may qualify for benefits if he is disabled from his "Own Occupation." (AR 30). In order to receive benefits for a period longer than 24 months, an employee must demonstrate that he is "Disabled from all occupations." (AR 31). Under the Group LTD Policy, a claimant is "Disabled from all occupations if, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder, [he is] unable to perform with reasonable continuity the Material Duties of Any Occupation. *Id.*

In 2013, Standard added an amendment to the LTD Policy titled "Disabilities Subject to Limited Pay Periods." (AR 9–10). The effect of the amendment was to cap coverage at 24 months for certain "Other Limited Conditions," including chronic pain conditions, carpal tunnel, arthritis, and "diseases or disorders of the cervical thoracic, or lumbosacral back and its surrounding soft tissue." (AR 9). "Other Limited Conditions" expressly do not include "radiculopathies that are documented by electromyogram," myelopathies, and myelitis. *Id.*

Thus, to continue collecting LTD benefits at the end of the 24-month period, a claimant must show that he is (1) "Disabled from all occupations" and (2) that he does not suffer from an "Other Limited Condition."

Mr. Bustetter was also insured under a Group Life Policy (# 647503-A). (AR 611, 730). Pursuant to the Group Life Policy, an insured who could demonstrate that he was "Totally Disabled" would be eligible for life insurance with waiver of premium ("LWOP"). (AR 805). "Totally Disabled" is defined in the Group Life Policy as someone who "as a result of Sickness, accidental Injury, or Pregnancy," is "unable to perform with reasonable continuity the material duties of any gainful occupation for which [he or she is] reasonably

fitted by education, training and experience." (AR 783). Notably, the provision which caps benefits at 24 months for disabilities "caused or contributed to" by "Other Limited Conditions" is not present in the Group Life Policy. *See generally* (AR 755–86).

In October 2014, Bustetter ceased working for CEVA due to an injury suffered one year earlier that caused chronic left knee pain. (AR 587, 612, 1195). Bustetter applied for and received short-term disability benefits pursuant to the Family Medical Leave Act. (AR 66, 1189). Before he could return to work, however, CEVA laid off Bustetter effective February 1, 2015. (AR 573, 593–94). In March 2015, Bustetter's orthopedic surgeon, Dr. Michael Grefer, diagnosed Bustetter with a "neck strain/sprain, left shoulder pain, cervicalgia, and spinal stenosis" and found that he was "unable to drive." (AR 298–99). Bustetter's short-term disability benefits expired on April 7, 2015. (AR 64).

On May 27, 2015, Standard approved Bustetter's claim for LTD benefits under the "Own Occupation" definition of disability, retroactive to January 7, 2015. (AR 375). Standard determined that due to Plaintiff's neck sprain, left shoulder pain, cervicalgia, spinal stenosis, SLAP lesion, shoulder tendinosis, and impending back surgery, he was unable to sit, stand, or walk for prolonged periods of time. (AR 455). Thus, Standard concluded that Bustetter was "reasonably precluded from performing the Material duties of his Own Occupation as a Tank Truck Driver." *Id.* Standard contemporaneously approved Bustetter for continued life-insurance coverage up to $100,000 with waiver of premium payments. (AR 453, 455, 507–08, 728–29, 1409–11).

On June 18, 2015, Standard informed Bustetter that it was investigating whether his conditions fell in the category of "Other Limited Conditions." (AR 366). If so, the "Disabilities Subject to Limited Pay Periods" limitation would apply and his LTD benefits

would be discontinued on January 7, 2017, 24 months after coverage began.  (AR 366).

Standard consulted Dr. Joseph Mandiberg, who wrote in a report on September 10, 2015 that Bustetter's left knee, shoulder, neck, and spine conditions constituted "Other Limited Conditions" subject to the 24-month cap in the Group LTD Policy.  (AR 212–13).  In July 2016, however, Bustetter was diagnosed with myelitis of the cervical spine, a condition expressly excepted from the list of "Other Limited Conditions" in the Group LTD Policy. (AR 9, 138, 152).  Standard confirmed with Bustetter on November 14, 2016 that his diagnosis of myelitis meant that his LTD coverage would not be limited by the two-year cap for "Other Limited Conditions" in the "Disabilities Subject to Limited Pay Periods" limitation.  (AR 472).  Nevertheless, Standard informed Bustetter that in order to continue to receive LTD benefits past January 7, 2017, he would have to demonstrate that he was unable to perform "Any Occupation."  (AR 472).

In support of his claim that he was unable to perform "Any Occupation," Bustetter submitted records and information from his treating physicians.  Dr. Douglas Deitch reported on March 27, 2015 that Bustetter should "avoid repetitive bending [of the] neck and lumbar" due to his "lumbar radiculopathies, lumbar herniated disc, neck pain, and cervical stenosis."  (AR 1060).  An MRI from March 31, 2016 revealed a "slight enlargement of the cord lesion," which "suggest[ed] an inflammatory etiology such as viral myelitis or systemic autoimmune disease."  (AR 151).  Another of Bustetter's treating physicians, Dr. Paul Moots, noted on April 1, 2016 that Bustetter's gait was "stiff and was slightly wide base."  (AR 150).  In reviewing the MRI of Bustetter's spine, Dr. Moots diagnosed Bustetter with "[c]ervical neuropathy related to intrinsic spinal cord lesions at

C7" and noted that "[m]yelitis is favored given the partial resolution of the MRI findings."

(AR 138).

Bustetter provided Standard with a list of medical providers and pharmacies, (AR 159–64), and identified the following medical conditions and treatments:

(1) "Myelitis/tumor of the spinal cord; unknown at this time";

(2) "Gastritis/ulcers of the stomach; Nexium 40 mg/day";

(3) "Hypertension; 320 mg Diovan/day and 10 mg Norvasc/day";

(4) "Sleep apnea; CPAP @ 10 cm";

(5) "Asthma; 500 mg Advair or Symbicort and Albuterol 90 mg."

(AR 154).

Finally, Bustetter filled out Standard's "Activities and Capabilities Questionnaire" on April 25, 2016. (AR 154). On the Questionnaire, he reported difficulty completing everyday tasks, stating that he is "unable to clean heavily and regularly due to pain, paresthesia, [and] neurological problems." (AR 155). He did, however, report being able to take out the trash, prepare his own meals, do laundry, vacuum, load the dishwasher, make his bed, and shop on his own with the assistance of a motorized shopping cart. (AR 155). Bustetter also reported that he visits with friends and relatives and that he is able to drive, but that his travel "has been drastically reduced." (AR 156–57).

Standard did not conduct an independent examination of Bustetter, although it was entitled to do so under the terms of the Group LTD and Group Life Plans. (AR 42, 809). It did, however, consult three board-certified physicians—Dr. Deborah Syna, Dr. John Hart, and Dr. Joseph Mandiberg—to conduct reviews of Bustetter's medical file. (AR 71–76, 115–19, 210–14, and 165–68). In his November 2016 report, Dr. Hart opined that

Bustetter's myelitis "is documented to be improving" and that his "strength and sensation on neurological examination regarding the upper extremities and cervical spine were essentially normal on multiple examinations at Vanderbilt [University Hospital]." (AR 119). Based on this medical evidence, Dr. Hart concluded that Bustetter had the functional capacity for light-level work. (AR 118). Dr. Mandiberg reached a similar conclusion. (AR 167).

In addition, to determine Bustetter's vocational abilities in light of his myelitis, Standard consulted Certified Rehabilitation Counselor Brian Petersen to conduct a Transferable Skills Assessment ("TSA"). (AR 619–38). In his report, Petersen observed that Bustetter has an Associate in Arts degree from Ashland Community College and an employment history as a truck driver. (AR 642). He also noted that Bustetter has fifteen years of customer-service experience and brief experience in telephone account collections. (AR 642–43). From this work history, Petersen determined that Bustetter could engage in sedentary occupations within his skillset that would meet the wage requirements under the Group LTD Policy. (AR 625). These occupations included motor-vehicle dispatcher, collection clerk, and order clerk. *Id.*

Based on Petersen's determination, Standard notified Bustetter on December 15, 2016 that he did not satisfy the Group LTD Policy's "Any Occupation" definition of disability, and therefore did not qualify for continued LTD benefits past January 7, 2017. (AR 332–35). Likewise, because Bustetter was not "Totally Disabled" as defined by the Group Life Policy, he would no longer be eligible for life insurance without payment of premiums. (AR 334–37). In its denial letter, Standard explained that Bustetter's osteoarthritis, tendinosis, and low back pain were considered "Other Limited Conditions"

subject to the 24-month benefit cap. (AR 335). Because the 24-month benefit cap extended to disabilities that are "caused by or contributed to" by "Other Limited Conditions," Standard did not consider these conditions in determining whether Bustetter was "Disabled from all occupations." *Id.*

On May 4, 2017, Bustetter filed an administrative appeal of Standard's claim determination. (AR 85). As part of his appeal, Bustetter provided Standard with a Functional Capacity Evaluation ("FCE") conducted by physical therapist Karen Scholl on January 16, 2017, two months after Standard's initial decision to deny Plaintiff's LTD benefits. (AR 110–12). The FCE stated that Plaintiff was suffering from hypertension, osteoarthritis, ulcers, asthma, and transverse myelitis, and was "unable to work at this time due to multiple areas of significant pain." (AR 110). The FCE also found Bustetter to be limited to 45 to 60 minutes of sitting, 5 minutes of standing, and 1 minute of walking. (AR 112). Furthermore, Bustetter's fine-motor skills on his right side were "impaired bilaterally due to pain and task performance" and "impaired by 50%." *Id.* Finally, the FCE stated that Bustetter should avoid bending, squatting, kneeling, and climbing, and that he should lift up to three pounds "rarely." *Id.* In addition to the FCE, Bustetter submitted records from visits with his neurologist Dr. Stephanie Lynn Dalton. (AR 89–107). Dr. Dalton noted Plaintiff's FCE from January and stated that his spinal-cord lesion had left permanent damage and "therefore his noted functional capacity will likely be impaired long term." (AR 89).

In reviewing Bustetter's appeal, Standard asked Dr. Syna to author a report in view of Bustetter's additional medical records. (AR 71–81). In her report dated June 7, 2017, Dr. Syna concluded that Bustetter was "restricted to sedentary-level activity" due to his

cervical myelitis and gait disturbance.  (AR 75).  Dr. Syna also found that Bustetter had the capacity for occasional standing and walking with the assistance of a cane and could lift or carry five to ten pounds using one arm.  *Id.*  Furthermore, Dr. Syna concluded that Bustetter was able to reach and finger "continuously" on the right, but only "frequently" on the left due to carpal-tunnel syndrome.  *Id.*

Standard consulted with its vocational expert Mr. Petersen, who opined that, when considering Dr. Syna's findings, Bustetter was capable of performing the sedentary occupations of motor-vehicle dispatcher, collection clerk, and order clerk.  (AR 615).  Petersen concluded that Bustetter's physical limitations either posed no impediment to completion of his job requirements or could be accommodated at the workplace.  For example, he stated that "[a]ny lifting required could either be performed with one arm or be accommodated" and "[p]ostural change could be accommodated . . . with the provision of a sit/stand workstation."  (AR 615).  Petersen also determined that Bustetter could perform in any of the positions without having to lift more than three pounds, which was the weight limit identified in Bustetter's January 2017 FCE.  (AR 614).  Therefore, on August 4, 2017, Standard informed Bustetter that the initial decision on his claim was upheld and that his request for continued LTD benefits would be denied.  (AR 396–401).  Once again, Standard, in its denial letter, noted that Bustetter had been diagnosed with medical conditions (e.g. carpal-tunnel syndrome) falling under the "Other Limited Conditions" limitation that were not considered in determining whether Bustetter was eligible for continued LTD benefits.  (AR 400).  The denial letter did not include a ruling on Plaintiff's entitlement to continued LWOP benefits.

Having exhausted his administrative remedies, Bustetter initiated this lawsuit under the Employee Retirement Income Security Act ("ERISA"), seeking review of Standard's decision denying his request for LTD and life-insurance benefits. (Doc. # 1). On May 1, 2019, Standard moved for judgment on the Administrative Record. (Doc. # 46). Plaintiff simultaneously moved for summary judgment. (Doc. # 47). Each party has submitted Responses and Replies. (Docs. # 48, 49, 50, and 51).

## II.    ANALYSIS

### A.    Standard of Review

The parties dispute the proper standard of review in this case. Bustetter argues that the Court should employ de novo review of the administrator's benefits decision (Doc. # 47 at 22), while Standard argues in favor of the more deferential arbitrary-and-capricious standard. (Doc. # 46-1 at 18–19). Ordinarily, de novo review of a decision to deny ERISA benefits is required "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *accord Shy v. Navistar Int'l Corp.*, 701 F.3d 523, 529–30 (6th Cir. 2012). Because the Court finds that Standard's denial of LTD and LWOP benefits was arbitrary and capricious, the Court need not decide the standard-of-review issue. *See Gillespie v. Liberty Life Assurance. Co.*, 567 F. App'x 350, 353 (6th Cir. 2014).

Under the arbitrary-and-capricious standard, the Court "will uphold a plan administrator's decision 'if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.'" *Balmert v. Reliance Standard Life Ins. Co.*, 601 F.3d 497, 501 (6th Cir. 2010) (quoting *Baker v. United Mine Workers of Am. Health*

& *Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991) (per curiam)).  Thus, the Court "must accept a plan administrator's rational interpretation of a plan even in the face of an equally rational interpretation offered by the participants."  *Morgan v. SKF USA, Inc.*, 385 F.3d 989, 992 (6th Cir. 2004).

Although the arbitrary-and-capricious standard is deferential, "it is not a rubber stamp for the administrator's determination."  *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 617 (6th Cir. 2006).  Rather, the reviewing court must examine "the quality and quantity of the medical evidence and the opinions on both sides of the issues."  *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003).  Furthermore, the arbitrary-and-capricious standard "does not require accepting unreasoned conclusions," *Gillespie*, 567 F. App'x at 355, and "a denial of benefits will not be upheld where there is an 'absence of reasoning in the record.'"  *Okuno v. Reliance Std. Life Ins. Co.*, 836 F.3d 600, 607 (6th Cir. 2016) (quoting *McDonald*, 347 F.3d at 173).

## B.    Group LTD Policy

A review of the record reveals that Standard's denial of Bustetter's administrative appeal was arbitrary and capricious. As part of his administrative appeal, Bustetter submitted additional evidence to support his claim, including an FCE from January 2017, which stated that Bustetter was "unable to work at this time due to multiple areas of significant pain."  (AR 110–12).  Bustetter also provided Standard with medical records from his visits with his neurologist Dr. Dalton, who noted that his spinal-cord lesion had left permanent damage and that his functional capacity would "likely be impaired long term."  (AR 89).

Although the Group LTD Policy permits Standard to have a claimant examined by a physician of its choice (AR 42), Standard chose not to do so. Instead, Standard commissioned a report from Dr. Syna who after reviewing Bustetter's updated medical records, opined that Bustetter was capable of performing sedentary-level work despite suffering from cervical myelitis and chronic radiculopathy. (AR 75). Mr. Petersen then relied on Dr. Syna's conclusion to find that Bustetter was capable of working in sedentary occupations.

As Standard correctly points out, a plan administrator may rely on the opinions of its hired consultants and it need not "accord special deference to the opinions of treating physicians." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003). However, an administrator's reliance on non-treating physicians alone is one factor to consider in assessing whether the administrator acted arbitrarily. *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 167 (6th Cir. 2007) (citing *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 295 (6th Cir. 2005)). Moreover, the Sixth Circuit has observed that "a plan administrator's failure to conduct a physical examination 'may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination.'" *Cooper*, 486 F.3d at 167 (quoting *Calvert*, 409 F.3d at 295).

More importantly, that an administrator may rely exclusively on non-treating physicians "does not mean that the administrator can 'arbitrarily refuse to credit a claimant's reliable evidence.'" *Gillespie*, 567 F. App'x at 353 (quoting *Nord*, 538 U.S. at 823). In her second review of Bustetter's medical record, Dr. Syna devotes a mere paragraph to discussing Bustetter's January 2017 FCE and Dr. Dalton's notes. (AR 74). Like in *Gillespie*, where the Sixth Circuit held that the claim administrator acted arbitrarily,

here Dr. Syna "failed even to acknowledge that [Bustetter's] treating physicians disagreed with [her] conclusion." *Gillespie*, 567 F. App'x at 353.

Dr. Syna must provide "at least some sort of explanation for [her] dismissal of the conclusions of [Bustetter's] treating physicians." *Id.* In what appears to be a vague attempt at criticizing Ms. Scholl's findings, Dr. Syna observed that the FCE failed to include validity testing.[2] (AR 74). Yet, "conclusory allegations" and "unsupported statements" discrediting the opinions of a claimant's treating physicians will not suffice. *See Cooper*, 486 F.3d at 170; *Kalish v. Liberty Mutual/Liberty Life Assurance Co. of Boston*, 419 F.3d 501, 508 (6th Cir. 2005). Dr. Syna fails to explain how or why the absence of validity testing impacts the reliability of the FCE and if its lack of validity testing was the basis for her disagreement with its conclusions. (AR 74). As such, Dr. Syna's blanket statement is "a mere assertion unaccompanied by any explanation" and "fails to address the fundamental concern of [Bustetter's] treating doctors" that he was unable to work due to significant pain.

To be sure, Standard in its brief lists a host of other reasons why Bustetter's FCE is unreliable. For instance, Standard points out that on the FCE, Ms. Scholl lists Bustetter's job duties as "truck driver/farming," implying that Ms. Scholl considered Bustetter incapable of performing medium-level work rather than sedentary work. (Doc. # 46-1 at 22). Furthermore, Standard asserts that "Ms. Scholl did not distinguish

---

[2]     Standard cites a number of district-court cases reviewing denials of social-security benefits in which courts upheld the Commissioner's decision to discount an FCE that lacked validity testing. (Doc. # 49 at 31–32). In the ERISA context, however, "courts have reversed benefits denials where the insurer dismissed probative clinical evidence simply for lack of validity testing." *Barbu v. Life Ins. Co. of N. Am.*, 35 F. Supp. 3d 274, 293 (E.D.N.Y. 2014) (collecting cases). Therefore, Standard may not rely solely on the absence of validity testing as a basis to discount the FCE.

limitations that may result from myelitis and radiculopathy from those that are caused or contributed to by Bustetter's Other Limited Conditions, including knee arthritis, shoulder tendonitis, or degenerative conditions in his spine." (Doc. # 49 at 31). Standard also draws attention to internal inconsistencies in the FCE, such as Ms. Scholl's statement that Bustetter is limited to sitting for no longer than one hour but is able to drive for two hours. (Doc. # 49 at 30–31).

These flaws may in fact provide Standard a valid basis for disregarding the January FCE. The problem for Standard, however, is that it failed to point out these flaws in its administrative review, waiting instead to present them in its brief to the district court. The Sixth Circuit has expressly rejected administrators' attempts at post-hoc rationalizations of their claims decisions. *See Corey v. Sedgwick Claims Mgmt. Servs.*, 858 F.3d 1024, 1028 (6th Cir. 2017) ("Although the administrator enjoys interpretive latitude, we defer only to its actual interpretations—it can't issue a conclusory denial and then rely on an attorney to craft a post-hoc explanation.") (citing *University Hosps.vV. Emerson Elec. Co.*, 202 F.3d 839, 848 n.7 (6th Cir. 2000)). As such, Standard may only rely on the explanation it provided in the administrative record, which is insufficient to withstand arbitrary-and-capricious review.

Finally, what is particularly troubling about Standard's review process in this case is that it relied on a non-examining physician's opinion to disregard Bustetter's subjective complaints of pain. The Sixth Circuit has made clear that "[b]ecause chronic pain is not easily subject to objective verification," it is arbitrary and capricious for a plan administrator to rely solely on a non-examining medical consultant to determine the severity and credibility of pain. *Shaw v. AT&T Umbrella Benefit Plan No. 1*, 795 F.3d 538,

550 (6th Cir. 2015); *accord Smith v. Cont'l Cas. Co.*, 450 F.3d 253, 263–64 (6th Cir. 2006). Standard second-guessed Bustetter's treating physician when it credited Dr. Syna and Mr. Petersen's assumption that Bustetter could perform sedentary work over Ms. Scholl's conclusion that Bustetter could not work at all due to his reported pain. Standard therefore made an implicit credibility determination without physically examining Bustetter. Accordingly, Standard's decision-making was arbitrary and capricious. *Shaw*, 795 F.3d at 550.

### C. Group Life Policy

Plaintiff asserts that "Standard failed to explain its basis for terminating Mr. Bustetter's LWOP benefits, which were ***not*** subject to a policy limitation." (Doc. # 47 at 29). The Court agrees. To qualify for benefits under the Group Life Policy, a claimant must show that he is "Totally Disabled," which is defined as someone who "as a result of Sickness, accidental Injury, or Pregnancy," is "unable to perform with reasonable continuity the material duties of any gainful occupation for which [he or she is] reasonably fitted by education, training and experience." (AR 783). In its December 15, 2016 denial letter, Standard writes at length about why Bustetter is no longer eligible for LTD benefits because he cannot demonstrate that he is unfit to perform "Any Occupation." (AR 335). Standard also expressly states in the letter that it did not factor in Bustetter's "Other Limited Conditions" in finding that he was not disabled under the Group LTD Policy. Specifically, Standard states that "[t]he information in your claim file still confirms that you have been Disabled by osteoarthritis of the left knee, tendinosis of the left shoulder and low back pain. . . . Because [these conditions] are considered Other Limited Conditions

as defined by the Group Policy, The Standard has applied the Disabilities Subject to Limited Pay Periods Limitation to your claim." (AR 335).

Standard then provided one paragraph explaining its reason for discontinuing Plaintiff's LWOP benefits, stating

> Your Group Policy also provides a benefit that continues your Group Life insurance without payment of premium provided you meet the eligibility requirements. To qualify, you must be under age 60 and unable to perform with reasonable continuity the Material duties of Any Occupation for which you are suited in light of your education, training and experience. *You do not appear to be eligible for this benefit at this time because you do not meet the definition of totally disabled.*

(AR 335–36) (emphasis added).

Standard's cursory explanation for denying Plaintiff's LWOP benefits leads the Court to believe that it relied on its findings regarding Bustetter's eligibility for LTD benefits. This was improper. It is true that being unable to participate in "Any Occupation" under the Group LTD Policy is functionally equivalent to being "Totally Disabled" under the Group Life Policy. *Compare* (AR 31), *with* (AR 783). Yet, qualifying for LTD benefits will often be more difficult because the Group LTD Policy is amended to include the "Disabilities Subject to Limited Pay Periods" limitation, which caps benefits for disabilities that are "caused by or contributed to" by certain "Other Limited Conditions." (AR 9). Stated differently, while Standard must consider Plaintiff's "Other Limited Conditions" in determining whether he is "Totally Disabled," it may not consider his "Other Limited Conditions" in determining whether he is unable to engage in "Any Occupation." Standard admitted in its denial letters that that some of Bustetter's "Other Limited Conditions," including his carpal-tunnel syndrome, severe subscapular tendinosis, and osteoarthritis, create substantial functional limitations. (AR 335, 400). Therefore, Standard did not

make a "reasoned judgment" when it used the same rationale to deny both Bustetter's LTD and LWOP benefits. *Elliott*, 473 F.3d at 618.

Furthermore, in its letter denying Plaintiff's administrative appeal, Standard fails to address at all Plaintiff's entitlement to LWOP benefits. Standard does not argue that Plaintiff waived his LWOP claim on appeal and it otherwise provides no explanation for its failure to address the LWOP claim. Accordingly, Standard's failure to discuss one of Plaintiff's claims in its decision on appeal was arbitrary and capricious. *See Godmar v. Hewlett-Packard Co.*, 631 F. App'x 397, 406 (6th Cir. 2015); *Zack v. McLaren Health Advantage, Inc.*, 340 F. Supp. 3d 648, 669 (E.D. Mich. 2018).

### D.    Remedy

Having found that Standard acted arbitrarily in denying Bustetter's claim for LTD and LWOP benefits, the Court must now determine the proper remedy. In ERISA denial-of-benefits cases, "courts may either award benefits to the claimant or remand to the plan administrator." *Elliott*, 473 F.3d at 621. "[W]here the problem is with the integrity of [the plan administrator's] decision-making process, rather than that [a claimant] was denied benefits to which he was clearly entitled, the appropriate remedy generally is remand to the plan administrator." *Id.* at 622 (third alteration in original) (internal quotation marks and citation omitted).

In reviewing the record as it currently stands, the Court does not find that Bustetter is "clearly entitled" to continued LTD and LWOP benefits. *Id.* Rather, Standard's claim determination was arbitrary and capricious because of its flawed decision-making process, including its failure to adequately address the concerns of Ms. Scholl and Dr. Dalton, and its erroneous application of the "Disabilities Subject to Limited Pay Periods"

limitation to Bustetter's LWOP claim. Accordingly, the Court remands this matter to Standard for "a full and fair inquiry." *Id.* "Such a remedy will allow for a proper determination of whether, in the first instance, [Bustetter] is entitled to [continued] long-term disability [and LWOP] benefits." *Hunter v. Life Ins. Co. of N. Am.*, 437 F. App'x 372, 380 (6th Cir. 2011) (second alteration in original) (quoting *Elliott*, 473 F.3d at 622).

### E.    Attorney's Fees and Costs

Both parties request that the Court award them attorney's fees and costs. (Docs. # 46-1 at 26 and # 47 at 29). In an action by a plan participant, the Court "*may* allow a reasonable attorney's fee and costs action to either party." 29 U.S.C. § 1132(g)(1) (emphasis added); *accord First Trust Corp. v. Bryant*, 410 F.3d 842, 851 (6th Cir. 2005). Section 1132 "confers broad discretion on [the Court] in making an award of attorney's fees in an ERISA action." *Schwartz v. Gregori*, 160 F.3d 1116, 1119 (6th Cir. 1998). Furthermore, there is no "presumption that attorney[] fees should ordinarily be awarded to the prevailing plaintiff." *Shelby Cty. Health Care Corp. v. Majestic Star Casino, LLC*, 581 F.3d 355, 376–77 (6th Cir. 2009) (alteration in original) (quoting *First Trust Corp. v. Bryant*, 410 F.3d 842, 851 (6th Cir. 2005)). Rather, the Sixth Circuit has established five factors the Court must consider in determining an award of fees under ERISA:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Secretary of Dep't of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985); *accord Moon v. UNUM Provident Corp.*, 461 F.3d 639, 642 (6th Cir. 2006). "Because no single factor is

determinative, the court must consider each factor before exercising its discretion."
*Schwartz*, 160 F.3d at 1119.  Because these factors are not statutory, however, they are
not dispositive.  *First Trust Corp*. 410 F.3d at 851.  "Rather, they are simply considerations
representing a flexible approach."  *Id.*

As the losing party, Standard is not entitled to recover its attorney's fees and costs
in this case.  *See Cattin v. Gen. Motors Corp.*, 955 F.2d 416, 427 (6th Cir. 1992).  The
Court also finds that, on balance, the five factors identified in *King* weigh against an award
of attorney's fees and costs to Bustetter.

The first factor concerns the degree of the opposing party's culpability or bad faith.
The Sixth Circuit has repeatedly observed that "the necessary degree of culpability is not
established by the fact that a defendant has been found liable."  *Gard v. Blankenburg*, 33
F. App'x 722, 732 (6th Cir. 2002); *accord Geiger v. Pfizer, Inc.*, 549 F. App'x 335, 338–
39 (6th Cir. 2013).  Accordingly, a remand based on an arbitrary-and-capricious denial of
benefits does not require the Court to weigh the first factor in the plaintiff's favor.  *See
Geiger*, 549 F. App'x at 338–39 (citing *Moon* 461 F.3d at 643).

Here, although the Court held that Standard acted arbitrarily in discontinuing
Plaintiff's LTD and LWOP benefits, its conduct did not evince a high degree of culpability
or bad faith.  Regarding the denial of Plaintiff's LTD benefits, Standard improperly relied
on its non-examining physician, who did not adequately address the opinion of Bustetter's
physical therapist, Ms. Scholl.  As mentioned, however, Standard may have had valid
reasons for discounting Ms. Scholl's findings, but failed to flesh out those reasons in its
explanation for denying Bustetter's claim.  Therefore, this is not a situation where
Standard "ignored overwhelming evidence of [the claimant's] disability, and, instead

denied [his] claim based on a theory that lacked legitimate foundation." *Heffernan v. Unum Life Ins. Co. of Am.*, 101 F. App'x 99, 109 (6th Cir. 2004). Rather, Defendant may have reached the proper conclusion regarding Plaintiff's entitlement to LTD benefits, but did not adequately justify its decision in the record. Accordingly, Standard's arbitrary-and-capricious decision to deny Plaintiff's LTD benefits did not involve a high level of culpability or bad faith.

As discussed above, the Court also found that Standard erroneously applied the "Disabilities Subject to Limited Pay Periods" limitation—which only exists in the LTD Policy—to Bustetter's claim for LWOP benefits under the Group Life Policy. Yet, a plan administrator's "erroneous interpretation of certain terms in its plan documents does not constitute culpable conduct for purposes of determining whether to award attorney fees." *Shelby Cty. Health Care Corp.*, 581 F.3d at 377 (citing *Foltice v. Guardsman Prods., Inc.*, 98 F.3d 933, 937 (6th Cir. 1996)). Therefore, Defendant's arbitrary denial of Plaintiff's LWOP benefits does not support a finding for Plaintiff on the first factor.

The second factor points in favor of Plaintiff, as Defendant likely has the ability to satisfy an award of fees and costs to the Plaintiff.

The third factor—the deterrent effect of a fee award on other plan administrators—does not weigh in Plaintiff's favor. "Deterrence 'is likely to have more significance in a case where the defendant is highly culpable' or where 'deliberate misconduct is in the offing.'" *Geiger*, 549 F. App'x at 339 (quoting *Foltice*, 98 F.3d at 937). As the Court has already found that Defendant was not highly culpable and did not act with a high degree of bad faith, it follows that awarding attorney's fees and costs in this case would not have

a deterrent effect. Thus, this factor weighs against awarding fees and costs. *See id.* at 339.

The fourth factor—whether the party requesting fees sought to confer a common benefit on all participants—likewise weighs against awarding fees to Plaintiff. To prevail on this factor, Bustetter must show that by bringing the lawsuit, he (1) "[sought] to obtain a common benefit for all of the participants in [CEVA's] plan" and (2) that other participants in the plan were similarly situated. *See Gaeth v. Hartford Life Ins. Co.*, 538 F.3d 524, 533 (6th Cir. 2008). Bustetter has not made such a showing. Therefore, this factor counsels against awarding Plaintiff attorney's fees and costs.

The fifth factor concerns the relative merits of the parties' positions. For the reasons discussed in regard to the first, third, and fourth factors, the fifth factor weighs against awarding fees to Plaintiff. While the Court ultimately decided in Plaintiff's favor on the merits, the decision was a close one. In these circumstances, a finding for plaintiff on the fifth factor would be inappropriate, as it would lead to "a result that would essentially require a presumption in favor of attorney's fees to the party that achieves some success." *Geiger*, 549 F. App'x at 339. Accordingly, the both parties' requests for attorney's fees and costs are **denied**.

## III.     CONCLUSION

For the reasons stated herein, **IT IS ORDERED** as follows:

(1)     Defendant's Motion for Judgment on the Administrative Record (Doc. # 46) is **DENIED**;

(2)     Plaintiff's Motion for Summary Judgment (Doc. # 47) is **GRANTED IN PART**;

(3)     This matter is **REMANDED** to Standard Insurance Company for a full and fair review of the denial of Plaintiff's LTD and LWOP benefits;

(4)     This civil action is hereby **DISMISSED** and **STRICKEN** from the Court's active docket; and

(5)     A corresponding Judgment will be issued contemporaneously herewith.

This 24th day of September, 2019.

Signed By:

*David L. Bunning*

United States District Judge

K:\DATA\ORDERS\Ashland Civil\2018\18-1 MOO Granting in Part Plaintiff's MSJ.docx